Defendant at Lead, arguing on behalf of the Defendant at the front, Mr. Jeffrey P. Orduno, arguing on behalf of the Defendant at the lead, and his opponent, Frank Kimmerer. Ms. Orduno, you are ready to proceed. May it please the Court, I'm Jeff Orduno. I represent North Route 38, LLC, plaintiff Apollon. We are here today to ask that you reverse and remand the trial court's decision. Your Honors, I believe what would help here is the gross context in which the situation occurred, and then dial in to the specifics of why we would contend that there were issues with the surety. Starting at the highest level, this was a project to complete a Walmart and build some public improvements around it. The agreements with Walmart, between Walmart and my client that also involved the City of Rochelle, were, let's say, interlocking and very secure to make sure that the project would get done. If my client failed to perform the project, Walmart would take over and complete the project. This was all known and agreed to by the City. A second piece of what is going on here is that there was TIF money that was issued, or came from TIF bonds that were issued, and that sat in a pool. That money was to go to my client upon completion of various phases or various items within the public improvements. So, basically... Upon completion, not upon substantial completion, correct? Upon... The TIF money, Your Honor, yes, would be dispersed upon... That's less maybe a punch list issue and more just a, we completed these items off the list. We did these items. Please give us our TIF reimbursement for these items. Here's a, maybe like a draw sheet for that. So, not necessarily so much a substantial completion issue. It's just a, almost thinking like progress payments, to analogize to a normal contract situation. So, that pool of money sat there that the City was able to use and had my client fail to perform, then the City could have taken that money and simply hired someone else to complete the work. And the fact that my client... There never would have been a situation in which the Public Construction Bond Act is carefully designed for that, where there are subcontractor bonds, or I'm sorry, liens, sitting out there, and the City then gets stuck with these subcontractor liens sitting on this property and sitting on the public improvements, and therefore has to pay those off, that never would have happened here, because the City itself was controlling the disbursement of essentially all of the construction funds. Let me ask you a question, just to clarify this in my mind. Are you saying the letters of credit and the TIF are too, should have been handled differently? Your Honor, we're saying that the letters of credit, in light of the TIF money, probably were not necessary. We would say that they were, think of it this way. If the agreements in the first place are putting a bell time, the TIF money is perhaps putting suspenders on with that. The City had plenty of mechanisms to know that this project was going to get completed and that there wouldn't be subcontractor liens. From a practical perspective, you know, that totally makes sense. But is there anything in the Bond Act that authorizes that or speaks of that? The Bond Act doesn't speak to that. So where is your authority? Other than it being a good idea. It would be a really good idea. I appreciate your point. What we do get to, though, is that this whole contest surrounds essentially the City doing things that are in violation of the face of the Bond Act. So even if the Court doesn't love that as an excuse to say, hey, we shouldn't have to post the letters of credit, what we do end up with, though, is things that are clearly in violation that occur against this backdrop of, wow, there's already all this other protection, yet you're still doing this. So let's cut to that because I think that's where the Court would like to go. We have situations where, for example, there was some work that was within the Illinois Department of Transportation jurisdiction, the IDOT work. It is, I believe, undisputed in the record and, in fact, agreed to by City Manager Dave Kleinman and confirmed by our project engineer, Nick Roneval, in their depositions, that the IDOT work was solely under IDOT's control, that that was not within the control of the City. Yet the City demanded from the beginning of the project that letters of credit be posted relative to that work. But is there anything that precludes that? Your Honor, I believe the language is by plain reading or common sense reading of the statute would preclude it because otherwise the effect of that, if you're saying that the City of Rochelle can demand letters of credit for work beyond its municipal control, then, in effect, nothing stops them from demanding letters of credit for work being done by some developer under their, you know, that's dealing with them somehow in Rockford or Chicago. Did you file the IDOT letter of credit, if you will, with the City of Rochelle? Sure. The IDOT bond, I believe, is what the Court is referring to. And the IDOT bond was not filed with the City of Rochelle. All right. Why not? Your Honor, I don't know if that was an oversight at that point in time. I don't believe they believe it was necessary. Now, that's probably for at least this reason, if not more. There were representations made by Sam Teser, the City Engineer, and that's clear from the deposition, or I'm sorry, the emails from Nick Roneval. This comes up in the promissory estoppel claim. There were representations there that, hey, if you get the IDOT bond, we won't make you keep the letter of credit. So, in reliance on that, there is a written memorialization meeting by Nick Roneval, our project engineer, that refers to and communicates that to Mr. Teser saying, Sam, here's my understanding of the meeting you just had. Essentially, he outlines a number of things, that being one of them. I'd say it's at least as clear as the representation in Kubota that you get the dealership or the dealership is yours. Because there's some question by the other side. Yeah, but that's a little different. There was reliance on whether or not I'll get the dealership if I get this tractor or whatever, you know, branch. Sure. This is a little different than that. I mean, so you're saying the whole reliance, the promissory estoppel I think you're saying, your reliance is based upon that representation? Our continued not raising, at least for a period of time, about that letter of credit related to the IDOT bond, or the IDOT letter of credit, that goes back to that representation by Mr. Teser. But even beyond that, we have a couple of other things. The face of the Public Construction Bond Act, the language that defendant Appleby points to, to say, I believe, if you read it, what it's doing is saying that, hey, if somebody has posted one of these other forms of surety with the clerk, then you can't go, the clerk, the city can't then demand some other form of surety. Like, hey, we don't want that bond from XYZ Insurance Company, which is authorized to do business and sell bonds in Illinois. We want cash. We'd rather have cash. That's what that language is talking about. The language isn't placing a requirement, I don't believe, that if you have something that's completely beyond the municipality's control, that you have to go post a body filed with some other municipality or some other municipal entity. In fact, if you look at the language of the act, it is referring to municipalities and something else, something that doesn't, and I, sorry, I don't recall which, it doesn't include I-NOT. So to go where the city wants you to go with this, you'd basically be saying that City of Rochelle can demand surety for any project being done anywhere, presumably, in the state. Well, that's kind of a frivolous position to take in a sentence, though, because it wouldn't make sense. Well, and that's what I mean, Judge. I mean, if it's one of their projects, if it's within their jurisdiction, of course. But, Judge, that's a big, long stretch. No, and I don't mean to test the limits, Judge, other than to say, if we dial this in sum, imagine if you had something where part of the work was in a neighboring county or a neighboring city, if two cities were abutting. Do both cities get to demand surety for that work because it's part of one global plan? I say no. I think that's exactly what the Act is designed to preclude. So your contention is that the June 2006 email from your developer's engineer to the city, summarizing his take on the meeting, that that was an unambiguous, that the response to that was an unambiguous promise? Perhaps, yes, Judge, that the representation made in that meeting, which we will never get to know about in court, at least at this stage, because the trial court cut it short. So there's a genuine issue of fact on whether an unambiguous promise was made. But they never filed that IDOT bond with the city of Rochelle. We did, Your Honor. It's our contention that both for the reason of the promissory estoppel and for the reason that it isn't facially required, they never should have taken the letter of credit in the first place. Wouldn't your argument be stronger had you done that? I'd love it. I'd love it to be honest, Your Honor. They would probably cut short a lot of this conversation, at least on that part. But I'm not sure that that really changes the outcome. Go ahead. Because the statute is what it is, and I don't believe it authorizes Rochelle to take, to demand surety for things beyond, basically beyond its control. Let's go to, let's talk about the statute of limitations because I think the statute of limitations is a big issue in this case, and I think the big question is when did this statute begin to run? Did it begin to run upon written notice of completion on July? Did it begin to run after the completion in October? In either, in any event, I think any, any, either of those dates, you still filed in September of 2016, or 2013, which is still beyond the statute in either of those cases. So explain to me how you proceed for how we ignore the statute of limitations. Sure, Your Honor. First off, we say the torn immunity act statute does not apply. We say. Okay. Let's assume for a second, just so we can complete the loop on this. Okay. The court's questioning. Sorry, just checking my time here. Take your time. We have a lot of time. Let's assume, okay, let's assume for a minute that, that it would be the relevant statute to say pardon me. Here's the problem with that. The statute, it's a continuing tort. Okay. These are the continuing tort. I mean, you rely, you rely on that Starcevich case. Is that, is that how you say it? Right. Starcevich tort is a repeated injury. Right. How is this a continuing tort or a repeated injury? Well, if the court thinks of it this way, essentially until the last dollar is released that's been held too long, the tort is not yet complete. So here's the problem with what the trial court did that makes this a muddled issue. The trial court, by cutting everything short, it assumes that the city held all the proper amounts of money and then released them on time. The problem with that assumption is that if our argument is true and there are issues of fact about it, then the trial court is wrong and the accrual date would be much later. What's the date? What's the last date? November of 2013 is when the last of the funds were released, and we actually filed suit before that. So magically the city found its way to release the funds after we filed suit, the last of the funds. And we get into a whole nest of factual issues that the trial court circumvented or truncated that are genuine issues of material fact. For example, my client said that Mr. Tesreau, the city engineer, that my client represented, he told Mr. Tesreau, the city engineer, that hey, the bid amount for such and such item within the project has been reduced. Therefore, Mr. Tesreau, the city should reduce its amount of surety required by the letters of credit. And they did that several times. Well, they did that over time, but they still used the same original number despite what should have been a reduction. They reduced it as kind of, I don't want to say if or when, they did it as they felt like, oh, we feel okay with how that's done. And that actually gets into a whole separate issue, which is whether releasing surety is in fact something more than a ministerial act. The city seems to take a position that it's this whole big hullabaloo, and that's how they end up with the Tort Immunity Act statute they say applies, but it really isn't. It's a ministerial act. But how is it ministerial if it really requires some discretion as to when we release these monies? Well, you have to say, like, for instance, you say, well, here, this is completion, except the bike path isn't done, or we're completed, except the lamps, the city street lamps aren't finished. I mean, doesn't that require some discretion as to whether or not to release the money? I would suggest that the way that actually the Construction Bond Act reads, there is a lot less discretion than one would think. If you think about it this way, once a punch list is issued by the city engineer, it comes down to a, I think, objective standard. But then the punch list has to be complete. Right, the punch list is complete, which goes off into a different space of the arguments here. But for the punch list to be completed, I mean, once that's done, then that, I think, is ministerial to release that. But that's not the only way that the statute. Doesn't he have the discretion to release all or part of it? Well, that's another question here. The trial court cut short because what part would you keep, what part would you release if we want to go into that land? And then do we have to have a reasonable punch list? There were facts here showing that the punch lists were unreasonable and vague. That sounds like a lot of discretion. Well, then, Your Honors, we can move on. That's not the only reason that the Tort Act. Oh, no, you have a lot of issues. The Tort Act doesn't apply. No, we do. That's the only reason the Tort Act doesn't apply. I mean, the real reason or the central reason it doesn't apply is this isn't injury. This isn't damages in the sense of the Tort Act. This is essentially something that happens by operation of law. It has nothing to do with how much we suffer with consequential damage. I could never find consequential damages under the Public Construction Bond Act and say, well, we had to have all those letters of credit posted so we couldn't go get other letters of credit for other projects, so now we've lost out on another million dollars. It's just kind of operation of law. It is what it is. It's a lot more like Rain Tree and what Don's talks about. What is it really like Rain Tree? Because in Rain Tree, they were asking for money back that was their money. In this case, you're asking for interest, statutory damages, if you will. So that money really isn't yours yet, and it wasn't yours. I know you think you're entitled to it, but being entitled to it or feeling you're entitled to it, is that a Rain Tree situation? I view it as more analogous to Rain Tree, partially because it arises by operation of law and partially because it has nothing to do with our actual damages or injuries. It just kind of is what it is in that sense. If Your Honor would like me to stop, I will, but time has elapsed. We'll give you a little bit more because we were asking some questions. Oh, sure. Sure, sir. What was it he was saying for you? I do have a question about, because I want to get this in in case we do terminate this soon, about the issue of substantial completion versus completion. Sure. Because the letter that was sent by the developer references substantial completion. Is that tantamount to completion under the Bond Act? Well, I'm not sure Your Honors actually have to decide that. I would say it is. I would say, acting in good faith, it is, especially when the punch lists that came were A, vague, and B, late. But it was before the punch list, though, right? The letter came before the punch list. Pre-dated the punch list. Right. The letter, then the punch list came. Right. So, at least at the point of the punch list, the city did have actual notice of all that was done, even if it was still nitpicking over a finite list of items. It knew what was done, and the money still wasn't forthcoming. Even leaving that aside, there's an October 3rd email, actually a set of October 3rd emails that are simulated to, from Nathan Bryant and from Ryan Fitzgerald, both with my client, to the city. And the latter of those basically says, hey, city, everything's done but the bike path. We'd like our letters of credit released. I want to go to city council to get our letters of credit released. Okay? So, at least at that date, the city had noticed that we considered everything done other than the bike path, yet monies were held for other things in the 2013, in the November of 2013. Can you do that? Can you say, hey, everything's done except for don't look at the bike path yet because it's not there. Can you do that? I believe you should be able to here. In fact, I would probably parse it even more finely. You certainly would in a regular construction sense, Your Honor. If you think about it, I don't know if you've ever dealt with concrete contractors, but telling a concrete contractor you're going to withhold his whole payment because there's a dollar's worth of work that's not done. Here's your punch list, and until that's done, I can give you a payment. That could be met with things other than a lawsuit, if you know what I mean. That's the way the real world functions. You know that you don't get to withhold all of everything because there's this much left to do. With that aside even, here the bike path was always treated as a distinct entity, a distinct part of the public improvements. There were four different parts of the public improvements, all treated distinctly, the bike path being one of them. So it's wholly unclear why any other monies would have been held. I believe they'll say it's pursuant to their ordinance, which we say runs a valid billing tool. Does that correspond with the four or five, whatever it was, letters of credit for each one of those? Yes, that's correct, Your Honor. And the bike path was a designated one of those? Yes, to the tune of $87,000, I believe. Let's go back to letters of credit since it was brought up. There's some question in my mind or in the statute, and it's whether or not a penalty under 3C is applicable to letters of credit. You're asking about where it says bond. I believe if you take the reasonable reading of bond, I believe it would mean to include everything, perhaps an oversight, and not listing the whole litany of choices. I do acknowledge what the Court's saying, though. Because I think in the legislative history they talk about cash bond because the reason behind it is to give these guys their money back as opposed to holding on to it. But that's just something I had a question about. Also, just briefly, you talked about rain tree. And in your complaint at paragraph 14, you specifically state that you are demanding statutory damages in amount to be proven at trial anticipated to be approximately $800,000. So statutory damages. Damages was my word, Your Honor. Maybe not my best choice of words, but it was my word. I'll allow that. Would Your Honor prefer I wait for rebuttal? Yeah, you can rebuttal. Thanks for thinking that. Thank you. Your Honor, may I have a question? Yes. You know, I failed to mention, and I just want to mention to everyone here, typically we have three sitting up here. As you'll see, you'll only see two. Justice Hudson, who is our presiding justice, had a funeral to attend today and is unable to be here. However, he will listen to this on tape, and he will conference with Justice Spence and I in making the decision. So thank you. Thanks for pointing that out, Mr. Manning. Thank you for your support. I was so excited to get to hear you. That's okay. We were advised of it. So we'll see you there. I'm Ellen Emery. With me at counsel table is my co-counsel, Brent Wagner. We represent the city of Rochelle. I think in this case, upon initial look at the whole of what was filed at the court, it can all come back and get narrowed down to what we're here is Judge Reddington's memorandum in writing summary judgment. A lot of the going back to square one, woulda, coulda, what would this mean, is assuming that he's wrong. And he found simply in his way as much as he needed to, and then he was done. And he found that, first of all, he determined that the July 21, 2011, was the latest the statute of limitations could have approved. And so he gave the appellant the benefit of the doubt and said, hey, this is when you claim everything should have been released, even though you claim substantial completion, which is not completion, under the statute and under the law. I'm going to give you that, and then I'm going to look at what should have been filed within a year after that, which was not. It was not filed until September 2013. But technically, he wasn't completed until later. Right. But as Mr. O'Donoghue argued, it's kind of, I think, and with no disrespect to him, it's kind of weird that he's arguing the statute of limitations didn't accrue until, that it was a continuing tort until the money was released. Right. But on the flip side, you're arguing the other side. Well, I'm arguing that the statute accrued if there was a wrongful taking or a wrongful requirement in the first place. If someone said you need to put letters of credit out for $5 million or the total here, back in 2010, what were they waiting for? If they didn't want to have to file that amount of letters of credit, they should have brought a suit saying, hey, it's duplicative, it's something, but it's not right. That's your latches argument? Yes. Why did they rest on their laurels? And the other thing is that they're claiming a tort, but this whole, well, it didn't end until they gave us our money back, is like if, you know, this microphone is the court's property. If I take it out of the stand and I leave with it, it's conversion, I'm holding on to it. Does that tort accrue when I wrongfully took it? Every day you keep it. It continues, doesn't it? Then that means I should keep it because the statute won't accrue until I give it back to you. Or the theft, if you touch that again. I didn't touch it. It looked like it did. I didn't. But that's the thing is they're saying until we release the money, the statute didn't accrue. Well, then why should we release the money? We could keep going in ad finitum since the statute of limitations under their theory would not have accrued. Now, here's an interesting theory that he brings up, and I want to hear what your position is on it. You have TIF monies that you collected. Yes. You're holding on to the TIF monies. You get the money. You have the money. Yes. All collected. And you also have bonds. Yes. And letters of credit. Right. Why was the TIF money not released at that time? It was proceeds from the sale of bonds. With the sale of bonds comes an obligation to protect the investment of the people, especially taxpayers, who bought the bonds. The law is clear. You cannot use that money in lieu of anything else and not require a surety. If North Route 38 had walked off the project and we had to use the bond money to pay a replacement contractor, it puts all of the bond holders and the purchasers of the bonds, they're now at risk. So you're still looking at it from the same completion. Absolutely. That money, the money is not raised in lieu of surety. The money is raised, and it was a gift. It was like, hey, we'll give you up to $4 million more. Now, Route 38, we do business with you. This is great. This was a gift, and it was $3.3 million that apparently wasn't enough in this case. But you cannot put at risk taxpayer funds in having to pay out on bonds by having given up the money from the sale of the proceeds. Okay. And then Judge Reddington was also perfectly clear, as is the Public Construction Bond Act. If you think there's duplicative surety, file the IEDOT bond with the city clerk. Under the Public Construction Bond Act, the city would have had to say, okay, under the law, it's duplicative, but we see that IEDOT bond now. We know that it's covered. Here's your money back. But based upon that email, didn't the city of Rochelle know there was an IEDOT bond? It doesn't matter. They were required under the Public Construction Bond Act for projects within their city over $50,000 to require surety in various forms. In this case, it ended up being letters of credit. So the knowledge of the IEDOT bond isn't sufficient? No. The Public Construction Bond Act is clear why it's there. And it's there to protect the residents of municipalities that underwrite everything a municipality does. That's why it's there. So you're saying if they can file it with the city, then the city would have been required to release the letter of credit? Yes, I believe so. I believe so, yes. There certainly wouldn't have been, I don't think, a good faith basis under the PCBA to keep it, and certainly if they had filed it, I believe that somebody that's litigious, and even if they're not litigious, would have run into court and said, we are seeking an interruption for the mandatory to release the bond. Is the grand opening of the Walmart evidence of completion? No. No, there were several projects, and all due respect to Walmart, I think if they get a first load of goods in there, they're happy to open to the public, but there were other things that had to be done for completion. And there's case law cited in our brief on that, that opening to the public is not completion. It may be substantial, but construction law is very clear on the difference between substantial and completion. And the Bond Act, as far as that issue of substantial completion as opposed to total completion, why couldn't they have released all of those letters of credit except for the one for the bike path? Because there was still work to be done. Street lights? And, yes, and there were other things that Mr. Tesfor put forth on the punch list, and completion is completion. Substantial completion is different, and there is case law, there's custom and practice. Everybody that is a contractor or in construction, or if you ever even had your personal house built, you know what a punch list is, and you know what the difference between substantial completion and completion is. But you were reducing the letters of credit all along. Right. And they were paying out. The city was paying out two proceeds also. You see the big chunk that went out early on of, I believe it was almost $2 million, or it was at least over $1 million, and they were paying that and sending money out. They were also reducing the letters of credit as they went along, and they did the letters of credit according to the municipal ordinance, which North Route 38 agreed to as far back as 2005. Isn't the reasonableness, though, of that punch list, isn't that a question of fact? No. Why not? Why wouldn't it? Because that would mean that if it's a question of fact as to the reasonableness of the punch list, it would mean does it constitute completion or substantial completion. If the reasonableness of the punch list would then mean the law is substantial completion if we think it's substantially complete because we don't like your punch list, that would open up a whole new gamut of claims of give us our money, and the reason that people see the difference between substantial completion and completion is if you release the surety in total, what's the incentive for the developer to finish the punch list? So who makes that determination, and is there a determination made, or are you saying you just reduce it based upon a formula? Well, it can be reduced based on discretion. Okay, there's this left, and it's not that big of a deal. There's this left, and it costs $38,000. But they released it. Ninety percent went off the top right away. Ninety percent of those five letters of credit were returned to North Route 38. If it's a matter of discretion, though, isn't that by its very nature a question, a possible question of that? It may be if you get to that, but in this case, that would mean is it a question of fact as to whether the statute of limitations accrued when North Route 38 believed that the punch list wasn't very good and they should have gotten the rest of the money. So then they would have to concede, yeah, that's when our statute of limitations accrued, because that's what they're saying is we think substantial completion is good enough. But in the real world, it isn't because the difference between substantial and complete completion is the incentive for people to finish the projects this time. So how can it be a question of law, though, for one party to just say, you know what, I don't think that's finished. I don't think it's finished. It might be, but isn't that what courts are for? Isn't that what a fact finder decides? It may be what courts are for, but if it is what courts are for, then they should have filed, because that's when their statute would have accrued. Oh, I see. So let me ask you about this interceptor. In counsel, your opponent states that they were under duress in signing this because they did sign it up under protest, I believe, correct? Or they turned the money over under protest. Well, they claim the interceptor agreement was for the sewer under Route 38. The contractor was Gilbert's, and they didn't finish the job. North Route 38 volunteered, let us go in and we'll finish it. We said, okay, then we require this. They could have said, forget it, get somebody else to do it. But they didn't. If they did that, would that have jeopardized the whole job? No. Put them off at all? No. Would it cost them more money? No. They could have declined to do the job, and if the city had said, well, you volunteered to do this, and if you don't do it, then we're not going ahead with the Walmart project, then they had a giant breach of contract. Or, as they say, too, there would have been delay, and then it would cost them more money in waiting, right? That may be a fair question, but that also. If they thought it was under duress, courts were open. And this is our legislation. They sat on everything until all was done, and now we're on a lot of money. How do you distinguish the Privilege v. American National Bank case that they rely on, on that duress issue? It is – let me just pull my note here on that. I remember I wrote that just yesterday about that. Let's see where I put it. Oh, okay. Here. And that was out of this court. And Privilege said that a threat to break a contract does not constitute duress because there's a full and adequate remedy if the other side actually breaches. Now, that goes back to, well, what if the city had said, well, if you don't do this, we're not going to do the Walmart deal. That's directly addressed saying that gives you a breach of contract case. Privilege also said that a finding of duress is, quote, less likely if the party has the assistance of counsel and adequate time to consider the proposed contractual terms. There was about 13 or 14 months of the attorneys going back and forth negotiating the contract, clearly represented by counsel. Under Privilege's own language, there was no duress here. And if there was, they certainly haven't shown it. And if they thought there was duress, they could have said, you take back our offer on the interceptor agreement, and if you break the contract, we're going to hold your feet to the fire and not wait eight years to do it. Do you have anything further? You can proceed if you have other areas you want to go over. No, basically that's it. It's just that, like I say, good timing, huh? That Judge Reddington gave him the benefit of the doubt about the life statute limitations, and that's why, you know, he ticked off the various, you know, check the individuals who are not eligible for the contract. The various counts being outside the statute limitations. And, of course, we ask that his granting of a motion for summary judgment be affirmed. Thank you very much. Isn't Privilege a little different than the case here? I mean, actually, Privilege, they found that there was no duress. Right. It just gives us the standard. Your Honor, it's hard to find a spot on a case where municipality is engaging in duress. Yeah, I know. I mean, the facts in that case are a little more extreme. I mean, that guy was due to lose millions, and they knew it, but they still did not call the first. Sure. And if I could remind the Court of what's in the amended affidavit of Brian Fitzgerald, his first affidavit, the amended version. D.R. Gilbert was released over the objection in North Route 38. D.R. Gilbert had basically engaged in a bunch of cost overruns, was our contention. The city released them against her, which is the city then comes back and basically charges us for that and uses the opportunity, the withholding of the grading permit for the Walmart project in order to basically say, look, you're going to sign this release, you're going to pay us extra more than what you're required because you have to cover a bunch of that, and by the way, you're not getting the grading permit until you sign this release. That is the gist of what is in the Brian Fitzgerald amended affidavit. But did you get your money back from that? No, Your Honor. To this day, we don't have our money back. $788,000, I believe, in damages on them. The amount that the city required was $271,000, a little plus, over what was stationally required under the contract, in the Northeast Intersector contract. So, Your Honor, to go back to context for a minute, this actually all ties back to a case that I believe Justice Spence sat in on, Spliers Landing versus City of Rochelle back in 2012, 2013, where basically this court held it. They reversed the court below. It was, again, where the city had, in that case, they had drawn on a letter of credit, and this court held it. It's a Rule 23 order, so I want to be clear about that, but just pointing back to the history of events related to our related party, Common Human Owners, and the City of Rochelle. This city held it. I believe it would defy common sense to give the contract. They are reading that the city wanted to give it, and then it drew on a letter of credit based on it. So this is a pattern of behavior we've seen from Rochelle. It's part of why we're here. But back to the kind of gist of what we're specifically here on today, the IDOT money, just go back to this, never should have been required in a letter of credit, never should have been required in the first place. If we take 550-1, the Public Construction Bond Act, it speaks to the bond being required for public work of any kind costing over $50,000 to be performed for the state or any public political subdivision thereof. This wasn't work being performed for the City of Rochelle, the IDOT. That's, I think, undisputed in the record. So that money should have never been required. The streetlight money never should have been required. Those weren't on the plats. That was some piece of a separate agreement. That's not work that would be subject to the Public Construction Bond Act. And we have the contentions that the amounts demanded were in excess of the actual bid amount, that there was notice of that. So suppose for a minute that the city was even $100,000 or $1,000 over in the first place. What happens is it's a cascading effect. So over time, even though parts of the letters of credit are being released, they're always, let's say, $100, they're always $100 excessive. So then we get back to the issue of when the cause of action accrues. So the trial court seemed willing to assume that, oh, the amounts of money were always right, contrary to the disputed facts of the record, and everything was always copacetic. I mean, that's simply not the case, and it's clear because my client kept demanding it. My client kept picking at this. That's clear from the depositions, the affidavits. It became a point of contention. And again, this exists in the context of my client trying to complete a huge project, weighed against, well, do I run to court and get a solution? The Nathan Bryant verified statement. That statement tells us that Walmart is highly adverse, based on his experience working with Walmart over years as an engineer, and then internally with my client, highly adverse to lawsuits. If they perceive like, hey, there's some problem going on in Rochelle, the economy was in a downward spiral at that time. Walmart had closed out a lot of planned store openings or planned construction projects, and they had reduced a lot in scope and delayed a lot. This was one that somehow it got reduced a little but was still on track to get done. The concern was, if we run to court right now and make some public practice out of this, we will never get this project done or Walmart will back out. Is that a record? Nathan Bryant testified. Nathan Bryant put that in there? Yeah, and that's his construction things. But again, set of facts. If I could just quickly point out, and then I'll wrap up. Letter of credit. I mean, when we talk about is this a cash bond or how is this money posted, I mean, at the end of the day, this is all anything that gets posted as a bond by my client or in the form of a bond, whatever it is, comes at some cost to the client. It's monies that are tied up because cash backs that letter of credit. It's in a bank account. Oh, I was just discussing that because I thought it was interesting when researching this to find the legislative discussion. I can't remember which legislator talked about it. He said cash bond. And I think what you're pointing out is true. Whether it's a cash bond, it is cash somehow costs your client money. I appreciate that. I'm not going to make you. So, yeah, for these reasons, we've just stated the trial court cut everything too short, I think, to make any proper finding about what any statute of limitations would have accrued, could have accrued, and for that reason, the court should reverse and remand. All right. Thank you so much. Thank you, Your Honor. Thank you. Ms. Emory, thank you. Mr. Arduno, thank you for your time and your intelligent arguments. That's what keeps us coming back to work every day. We love it. So thank you so much. Have a very safe travel back. Thank you.